FILED'06 MAR 28 09:47USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BRENDA DUGGER, | CV. 05-547-PK |
| Plaintiff, | OPINION AND ORDER |
| v. | OF REMAND |
| OREGON RESTAURANT SERVICES, INC., an Oregon corporation, d/b/a DOTTY'S, | |
| Defendant. | |

PAPAK, Magistrate Judge:

Plaintiff Brenda Dugger filed this action in state court, alleging wrongful constructive discharge, hostile work environment under O.R.S. chapter 659A and Title VII, 42 U.S.C. § 2000e *et seq.*, and violation of state wage laws. Defendant Oregon Restaurant Services, Inc. (ORSI), removed the case to this court, which has original jurisdiction over Dugger's Title VII claim, 28 U.S.C. § 1331, and could exercise supplemental jurisdiction over Dugger's state law claims, 28 U.S.C. § 1367.

Before the court is ORSI's Motion for Partial Summary Judgment against Dugger's claims

Page 1 - OPINION AND ORDER

for wrongful constructive discharge and sex discrimination under O.R.S. chapter 659A and Title VII. For the reasons that follow, ORSI's Motion for Summary Judgment (No. 18) should be granted on Dugger's Title VII claim, and denied as moot on Dugger's remaining state law claims.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. See Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List,

Page 2 - OPINION AND ORDER

880 F.2d 1040, 1045 (9th Cir. 1989); Harper, 877 F.2d at 731. The opposing party may not rest on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

## FACTUAL BACKGROUND

Because this is a Motion for Summary Judgment, the court must view the facts in the light most favorable to the non-moving party and draw all inferences in the non-moving party's favor. Reeves v. Sanderson Plumbing, 530 U.S. 133, 150 (2000).

ORSI operates a chain of delicatessens under the name "Dotty's." There are 26 Dotty's locations in Portland. Each Dotty's serves sandwiches, snack foods, coffee, beer, and wine, sells lottery products, and has video lottery terminals. ORSI also maintains a central office in Northeast Portland.

Dugger was hired by ORSI to the position of customer service clerk on April 24, 2004. At the time she was hired, Dugger reviewed and signed a set of General Rules and the Dotty's EEO and Harassment Policy, which is ORSI's sexual harassment policy. In September 2004, Dugger was promoted to Area Manager, with responsibility for several Dotty's locations. Dugger went to the central office approximately two times each week to do payroll for her locations.

Dugger claims that she was subjected to a sexually hostile working environment while employed by ORSI. Specifically, Dugger alleges that conversation at the central office often

Page 3 - OPINION AND ORDER

involved sexual talk. For example, Erna Bulow, the General Manager for Oregon, made reference to the size of her husband's penis and discussed when they liked to have sex. Erna's husband is Russ Bulow, ORSI's Operations Manager for Oregon.

Dugger heard from Sherrill Garner, another manager, about an incident that happened when Garner and the Bulows were out at a bar. Specifically, Garner and Erna began kissing. Russ then pulled his pants down, stuck his penis between the two women, and made a comment expressing his hope that someone would suck it. Garner relayed this story to Dugger during Dugger's training, and both Erna and Russ were listening to the conversation.

Dugger heard from Tammy Wilson, Area Manager, that Wilson and her husband went out to a bar with the Bulows. Later the four returned to the Bulows' house. Erna tried to get the men to pull down their pants to see whose penis was bigger, and Wilson told Dugger she was under the impression that the Bulows wanted to have a foursome.

Dugger was told by another female employee that on one occasion, while at a bar with the Bulows, Erna began kissing the employee and Russ stuck the employee's hand down his pants.

While in the central office, Dugger overheard another employee talking about how many different names there were for female body parts. Also while in the central office, another manager told Dugger that he almost had sex with Garner one night. Dugger also claims that Russ made comments about female body parts and his desire to sleep with certain female employees, and that he would ask female employees about their sexual encounters.

On occasion, ORSI would hold or continue meetings at bars or restaurants where liquor was served. Dugger attended five or six of these meetings. Dugger claims that Erna would become intoxicated and the crude and sexual comments intensified at those meetings. On one

Page 4 - OPINION AND ORDER

occasion, Dugger claims that Russ commented that Dugger has a "nice ass."

On December 22, 2005, there was a gathering at a bar near the central office and Christmas bonuses were distributed. Afterward, everyone was invited back to the Bulow's home. At the Bulow's, Dugger observed Russ put his hands on his zipper and tell Garner that if she did not make him cum in five second she would be fired.

Also at the Christmas party, Erna told Dugger that she would have to fire one of her employees for shortages. Dugger told Erna that the employee had improved and that his shortages were under control. Dugger claims that Erna responded by saying "Brenda, don't you get it, I have ways to manipulate a situation to be the way I want [it] to be." When Erna insisted that Dugger fire the employee, Dugger asked is she could wait and fire him after the holidays. Erna agreed.

As she was leaving the Christmas party, Dugger was stopped by Erna. Erna told Dugger that she realized Dugger was shy, but that because she was a manager Dugger needed to go out with the other managers. Erna then grabbed Dugger and forcibly kissed her.

On January 1, Dugger decided to quit so that she would not have to fire the employee accused of shortages and because she did not want to be subjected to the sexual environment any longer.

Dugger did not report the above incidents, or file a complaint with ORSI. However, Dugger claims that on her first day in the central office, another employee noticed and commented that Dugger was not comfortable with the sexual nature of the conversation. Garner then said that Dugger better get used to it, and Erna joked that she should have all of the managers sign sexual harassment papers promising not to sue.

Page 5 - OPINION AND ORDER

ANALYSIS

I.      Hostile Environment under Title VII

To establish a hostile environment claim based on sexual harassment, a plaintiff must show: (1) that she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2004). The work environment must be perceived as abusive both subjectively and objectively. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In determining whether the alleged conduct was sufficiently hostile or abusive, the court must examine all the circumstances, including the frequency of the alleged discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or mere offensive utterances; and whether the conduct unreasonably interfered with an employee's work performance. Clark County School Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (citations omitted). Simple teasing, offhand comments, or isolated incidents, unless very serious, do not show discriminatory changes in the terms and conditions of employment. Id. (citations omitted). Whether the workplace is objectively hostile is determined from the perspective of a reasonable person with the same fundamental characteristics as the plaintiff. Crowe v. Wiltel Communications Sys., 103 F.3d 897, 899 (9th Cir.1996); see also Ellison v. Brady, 924 F.2d 872, 879 (9th Cir.1991) (the "reasonable person" in sexual harassment case brought by female plaintiff is a reasonable woman).

ORSI argues that Dugger fails to present evidence on each of the three elements required to establish a claim for hostile environment. Dugger argues, and the court agrees, that there is

Page 6 - OPINION AND ORDER

sufficient evidence in the record to create a question of fact as to each element.

II.    **Ellerth/Faragher Affirmative Defense**

ORSI argues that even if Dugger had presented sufficient evidence of a hostile environment, it is nonetheless entitled to summary judgment based on the affirmative defense described in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 764 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

In Ellerth and Faragher, the Supreme Court held that an employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Ellerth, 524 U.S. at 765; accord Faragher, 524 U.S. at 808. But when no tangible employment action is taken, the employer may raise an affirmative defense to liability, subject to proof by a preponderance of the evidence. Ellerth, 524 U.S. at 765; accord Faragher, 524 U.S. at 808. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Pennsylvania State Police v. Suders, 542 U.S. 129, 137-38 (2004) (citing Ellerth, 524 U.S. at 765, and Faragher, 524 U.S. at 807).

In Suders, the Supreme Court addressed the question of whether the Ellerth/Faragher defense is available when a plaintiff claims wrongful constructive discharge. The Court held that a constructive discharge is not in and of itself a tangible employment action, and that the Ellerth/Faragher affirmative defense is, therefore, available in cases of constructive discharge where the discharge was not precipitated by a tangible employment action. Id. at 140-41.

Page 7 - OPINION AND ORDER

In its opinion, the Court pointed to two circuit court cases that correctly applied the Court's holding: Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27 (1st Cir. 2003), and Robinson v. Sappington, 351 F.3d 317 (7th Cir. 2003). In Reed, the plaintiff claimed a constructive discharge based on her supervisor's repeated sexual comments and an incident in which he sexually assaulted her. The First Circuit held that the alleged wrongdoing did not preclude the employer from asserting the Ellerth/Faragher affirmative defense. The Court noted that in Reed, the supervisor's behavior involved no official actions. In Robinson, after the plaintiff complained that she was sexually harassed by the judge for whom she worked, the presiding judge decided to transfer her to another judge, but told her that "her first six months [in the new post] probably would be 'hell,'" and that it was in her "'best interest to resign.'" Id., at 324. The Seventh Circuit held that the employer was precluded from asserting the affirmative defense to the plaintiff's constructive discharge claim. The Robinson plaintiff's decision to resign, the Seventh Circuit explained, "resulted, at least in part, from [the presiding judge's] official actio[n] in transferring" her to a judge who resisted placing her on his staff. Id., at 337. The Supreme Court stated, "[t]he courts in Reed and Robinson properly recognized that Ellerth and Faragher, which divided the universe of supervisor-harassment claims according to the presence or absence of an official act, mark the path constructive discharge claims based on harassing conduct must follow." Suders, 542 U.S. at 149-50.

In order to prevail on this affirmative defense, ORSI first must show that Dugger did not suffer a tangible employment action. If there was no tangible employment action, ORSI must then show that it exercised reasonable care to prevent and to correct harassment promptly, and that Dugger unreasonably failed to use ORSI's complaint procedure. See Ellerth, 524 U.S. at 764.

Page 8 - OPINION AND ORDER

Tangible Employment Action

Dugger argues that Erna's act of telling Dugger that she realized Dugger was shy, but that because she was a manager Dugger needed to go out with the other managers and then forcibly kissing Dugger constitutes a tangible employment action under Holly D. v. California Institute of Technology, 339 F.3d 1158 (9th Cir. 2003). The court disagrees.

A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth at 761. Unlike injuries that can equally be inflicted by a co-worker or supervisor, tangible employment actions are those actions within the special province of supervisors:

> When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury. A co-worker can break a co-worker's arm as easily as a supervisor, and anyone who has regular contact with an employee can inflict psychological injuries by his or her offensive conduct. But one co-worker (absent some elaborate scheme) cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control. Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors. The supervisor often must obtain the imprimatur of the enterprise and use its internal processes. For these reasons, a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer.

Ellerth, 524 U.S. at 761-62 (citations omitted).

A tangible employment action occurs when a supervisor threatens to fire an employee if the employee refuses to participate in sexual acts with the supervisor, and then actually does fire the employee for refusing. Holly D., 339 F.3d at 1167 (citing Ellerth, 524 U.S. at 753-54). In Holly D., the Ninth Circuit held that a tangible employment action also occurs when the supervisor threatens to fire an employee if the employee refuses to participate in sexual acts with the supervisor, and then the employee complies with the supervisors demands in order to avoid termination. Id. at 1167.

Here, the alleged activity does not rise the level of a tangible employment action. While Erna arguably did threaten employment action, she never brought that employment action to bear. Nor did Dugger consent to the act in a way that would bring this case within Holly D. In a case such as Holly D., the supervisor accomplishes the objective of the threat by making the employee's continued employment contingent on the employee's willingness to accede to the supervisor's sexual demands. Here, Erna forced the kiss on Dugger; Dugger did not consent to the kiss. This is not a case where the employee has succumbed to pressure exerted by a supervisor who is able to use the weight of the employer's enterprise in order to achieve the supervisor's unlawful purpose.

Because Dugger was not subjected to a tangible employment action, ORSI may avail itself of the Ellerth/Faragher affirmative defense.

<u>Reasonable Care</u>

The first prong of the Ellerth/Faragher affirmative defense requires ORSI to show that it exercised reasonable care to prevent and to correct promptly any sexually harassing behavior.

Faragher, 524 U.S. at 807. In Montero v. AGCO Corp., 192 F.3d 856 (9th Cir. 1999), the court held that the first prong was satisfied because the employer had a policy prohibiting sexual harassment. Id. at 861. The policy defined sexual harassment, identified whom employees should contact in the event they were subjected to sexual harassment, described the disciplinary measures that the company could utilize in the event harassment occurred, and included a statement that retaliation would not be tolerated. Id. at 862. Further, the plaintiff had acknowledged that she received a copy of the policy when she was hired and received two other pamphlets relating to the policy during her tenure. Id.

ORSI argues it had an extensive sexual harassment policy that met the standards established in Montero. ORSI points out that the policy defined sexual harassment, stated that harassment would not be tolerated, described the disciplinary measures to be utilized in the event of harassment, and directed employees to make complaints to the Operations Managers, Erna and Russ Bulow, the Corporate President/Owner, Craig Estey, or the Vice-President, Kathy Estey. Dugger admitted reviewing and signing a copy of the policy when she was first hired, and seeing a copy of the policy posted at some of the Dotty's locations. Finally, Russ Bulow testified at his deposition that he was required to undergo training when the policy was implemented in 2001. Erna Bulow also testified in her affidavit that a training program was adopted along with the policy.

Dugger argues that ORSI did not exercise reasonable care because ORSI did not conduct periodic training or monitor the workforce for harassing behavior. In Holly D., the court did note that in addition to having a policy with the elements described in Montero, the employer also conducted period training on sexual harassment, and publicized the training to employees via email. 339 F.3d at 1177. The court did not, however, state that the employer's efforts would not

Page 11 - OPINION AND ORDER

have been reasonable without the training. In fact, the court specifically rejected the plaintiff's argument that because the employer could have done more to communicate the policy to the employees, the employer's actions were not reasonable:

> The legal standard for evaluating an employer's efforts to prevent and correct harassment, however, is not whether any additional steps or measures would have been reasonable if employed, but whether the employer's actions as a whole established a reasonable mechanism for prevention and correction.

Holly D., 339 F.3d at 1177.

Here, ORSI had a sexual harassment policy similar to the policy involved in Montero. In Montero, the Ninth Circuit found that policy sufficient to satisfy the reasonableness element of the Ellerth/ Faragher defense. On the record before me, I can find no reason to hold differently in this case.

### Plaintiff's Unreasonable Failure

The second prong of the Ellerth/ Faragher defense requires ORSI to show that Dugger unreasonably failed to take advantage of any preventive or corrective opportunities provided by ORSI to avoid harm. Faragher, 524 U.S. at 807. A demonstration that the employee unreasonably failed to use any complaint procedure provided by the employer will normally satisfy the employer's burden under this element. Faragher, 524 U.S. at 807-08.

Here, the parties agree that Dugger knew of the policy but never made use of the complaint procedure. Dugger argues that her failure to invoke the complaint procedure was reasonable because the Oregon General manager, Russ Bulow, was one of the worst offenders. The court disagrees. An employee cannot escape responsibility for reporting harassment on the grounds that the employee's supervisor is the perpetrator. Alleged wrongdoing by a supervisor was the basis for liability in both Ellerth and Faragher. Ellerth, 524 U.S. at 765, Faragher, 524

Page 12 - OPINION AND ORDER

U.S. at 807. And in Suders, the Court affirmed that absent a tangible employment action, "the defense is available to the employer whose supervisors are charged with harassment." Suders, 542 U.S. at 141. The fact that the highest supervisor in the state was involved in the harassment does not undermine the defense where a complaint procedure was in place that allowed the employee to bypass the offending supervisor and lodge a complaint with someone else. Montero, 192 F.3d at 864. Here, ORSI's policy clearly provided that employees could report harassment to either of the Erna and Russ Bulow, *or* to the Corporate President/Owner, Craig Estey, *or* the Vice-President, Kathy Estey.

Dugger also argues that her failure to invoke the complaint procedure was reasonable because it was clear to Dugger that management did not take the sexual harassment policy seriously. This argument fails as well. In Holly D., the employee argued that her failure to report the harassment to the employer's employee relations department for a full two year after the first incident was justified because the employee had gone to the department on two previous occasions to report disability discrimination and was dissatisfied with how those complaints were handled. The court found the employee's hesitation was not reasonable. The court further pointed out that even if the hesitation was reasonable, the employee did not offer evidence to explain why she did not seek help through any of the other sources identified in the policy. Id. at 1179.

Here, Dugger claims her failure to complain was reasonable because management allowed a sexually hostile atmosphere to prevail and Dugger had been told by Garner that the Esteys and the Burrows were swingers together. If the court were to allow Dugger to avoid her duty to complain on the grounds that a sexually hostile atmosphere prevailed, then no employee subjected to sexual harassment would have a duty to complain. Further, this second prong of the

Page 13 - OPINION AND ORDER

Ellerth/ Faragher defense "is intended to fulfill a 'policy imported from the general theory of damages, that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages' that result from violations of the statute." Holly D., 339 F.3d at 1178 (quoting Faragher, 524 U.S. at 806). The court finds its is unreasonable as a matter of law to allow Dugger to avoid her duty to complain based on unsubstantiated office rumor.

Because Dugger failed to invoke the complaint procedure set forth by the ORSI sexual harassment policy, and the court finds that the failure was unreasonable as a matter of law, ORSI has satisfied both elements of the Ellerth/ Faragher affirmative defense and is entitled to summary judgment in its favor on Dugger's claim under Title VII.

III.     Remaining State Law Claims

Dugger's remaining claims for hostile environment under O.R.S. chapter 659A, constructive wrongful discharge, and wages all arise under state law. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.

Here, it is especially appropriate for the court to decline jurisdiction over Dugger's state law claims because the Oregon courts have not yet addressed whether the Ellerth/Faragher affirmative defense applies to hostile environment claims under O.R.S. chapter 659A.

Accordingly, in light of the court's decision to grant summary judgment on Dugger's Title VII claim, the court will decline supplemental jurisdiction over Dugger's remaining state law claims and remand Plaintiff's state law claims back to state court pursuant to 28 U.S.C. § 1447(c).

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (No. 18) is GRANTED on Plaintiff's claim for hostile environment under 42 U.S.C. § 2000e *et seq.*, and DENIED as moot with respect to Plaintiff's remaining state law claims on the grounds that the court has declined to exercise supplemental jurisdiction over those claims. Because the court has declined supplemental jurisdiction, Plaintiff's state law claims are REMANDED back to the Circuit Court of the State of Oregon for the County of Multnomah.

Dated this 28th day of March, 2006.

*/s/ Paul Papak*
Honorable Paul Papak
U.S. Magistrate Judge